UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

OSAZE TAGGERT,

        Plaintiff,

v.

        Case No. 2:23-cv-243

        Hon. Hala Y. Jarbou

ERIK S. JOHNSON, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has filed a motion for leave to proceed *in forma pauperis*, and upon consideration, the Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schroeder, Russell, Bolton, and Washington. Plaintiff's First Amendment retaliation and Eighth Amendment conditions of confinement claims against Defendant Johnson remain in the case.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Resident Unit Manager Erik S. Johnson, Warden Sarah Schroeder, Grievance Manager Richard D. Russell, and Grievance Coordinator Quentin Bolton in their official and personal capacities. Plaintiff also sues MDOC Director Heidi Washington in her official capacity. (ECF No. 1, PageID.2.)

Plaintiff alleges that on June 14, 2023, he received a J-pay from his mother indicating that she had called the prison regarding Plaintiff's concerns over black mold in his cell, which had caused issues with Plaintiff's breathing. (*Id.*, PageID.3.) On June 15, 2023, Plaintiff was ordered moved to a cell in the neighboring segregation unit. Plaintiff was told that the cell move was being ordered by Defendant Johnson. (ECF No. 1-1, PageID.15; *see* ECF No. 1, PageID.3.) Plaintiff was placed in a cell which was designed for prisoners on suicide watch, even though Plaintiff was not on suicide watch. (*Id.*, PageID.3.) Plaintiff asked a non-party corrections officer why he had been placed in that cell, but the corrections officer did not know. (*Id.*) Later that night, Plaintiff used the toilet, but was unable to flush it because it "had functional issues." (*Id.*) Plaintiff reported the issue to non-party Corrections Officer Rockford and asked if he could be moved to a standard cell as there were a number of those available. (*Id.*) Corrections Officer Rockford told Plaintiff that all he could do was put in a maintenance request, which he did. However, the plumber did not fix the toilet on June 16, 2023. (*Id.*)

Plaintiff asserts that until June 20, 2023, he was forced to live in "unhealthy [and] unsanitary conditions," and had to eat, sleep, and use the bathroom in a toilet which would not

flush. (*Id.*) Plaintiff states that once the toilet was full, he was forced to urinate and defecate on the floor or in the sink. (*Id.*)

Plaintiff states that he spoke to Defendant Johnson daily between June 20 and June 23, during Johnson's legal mail rounds, and Plaintiff asked why he had been placed in a suicide watch cell and why Johnson was refusing to allow Plaintiff to be moved. Defendant Johnson responded that he did not know, but that Plaintiff was "pissing people off." (*Id.*, PageID.4.) Plaintiff states that the only things he could have done to anger prison officials were to file grievances regarding black mold in his prior cell and to have his family phone the prison. (*Id.*) In responding to the grievances, Defendant Johnson claimed that Plaintiff was placed in an observation cell in order to be watched for reactions to black mold. (*Id.*) Plaintiff asserts that this is clearly false because Plaintiff's complaints of black mold were ignored for months and because health care staff never visited Plaintiff in the suicide cell, nor did they observe Plaintiff in the cell. (*Id.*, PageID.4–5.)

Plaintiff states that Defendant Schroeder denied his grievances at step II and that Defendant Russell denied them at step III. (*Id.*, PageID.5.) On July 6, 2023, Plaintiff filed an affidavit of formal complaint and sent it to Defendant Washington, but he never received a response. (*Id.*)

Plaintiff attaches copies of grievances and responses to his complaint as exhibits. (ECF No. 1-1.) Plaintiff filed a step I grievance on June 19, 2023, stating:

> Since 6-16-23 E Unit Staff have had to shut my toilet off [and] on in order for my urine [and/or] feces to properly be flushed. As of 6-19-23 at approx[imately] 4-5 pm I asked the [Corrections Officers] working base several of times to turn on my toilet to allow it to flush [and] they blatantly refused to, which forced me to house in the cell around my own urine [and] feces for hours. Cruel and unusual punishment, inhumane living conditions.

(*Id.*, PageID.10.) In the response, it was noted that when interviewed, Plaintiff confirmed that the issue had been resolved but refused to sign off on the grievance. (*Id.*)

In the step II appeal, Plaintiff asserted that he had been unable to flush the toilet for over seventy-two hours and was forced to smell his own feces and urine, despite the fact that there were other cells available. (*Id.*, PageID.11.) Plaintiff's step II and III appeals were denied on the same basis as his step I grievance. (*Id.*, PageID.12–13.)

Plaintiff attaches his step I grievance which was filed on June 16, 2023, in which he stated:

> I asked the [second] shift [sergeant] why I had to randomly in the day move from cell D-Base 18 to Base E 18 in E-Unit. He said that [Resident Unit Manager] Johnson ordered him to make this move, but also stated obviously that if I'd refused, I would get a [disobeying a direct order] misconduct so I cooperated. Once I was in the cell I quickly was unsatisfied and I've asked several staff to be moved out of this cell … because of several issues I have with being housed in the cell. To no avail I was told by [Corrections Officers] that there [were] orders made to keep me in this cell for prior grievance.
>
> 6-15-23 I was moved from a regular segregation cell (D-Base 18) into a cell used mainly for observation of suicidal inmates, I have not been placed on suicide watch and I have not done anything to required such cel[l] placement. Upon my immediate dismay I had several accommodations not being met while housed in E-B-18; I have no footlocker to place my property, no desk to use to eat on, no way to plug [in] the TV I have [ordered], no privacy, and worst of all I'm an insomniac and the light in this cell stays on 24/7 so, I asked E-Unit staff why I was placed in such a cell and they offered very much explanation. On [third] shift I used the bathroom at approximately 2-3 am [and] it malfunctioned when I flushed the toilet and the toilet water constantly [spun] and made a loud flushing noise for like 15-20 minutes until I made [Corrections Officer] Rockford aware of this issue and had him shut off the toilet completely which is the only way to stop it so he put in a work order for the toilet and I was unable to . . . use the toilet ever since so its urine and feces just sitting in there, unsanitary. I tried to get moved out of this cell 6-16-23 on [second] shift, [Corrections Officer] St. Onge asked to have me moved but the [lieutenant] said not to [and Corrections Officer] Roseland informed me . . . "You wrote a grievance about black mold so they moved you, not sure why it was this specific cell though." I have every inclination to believe the administration purposely placed me in this cell as a form of retaliation. . . .

(*Id.*, PageID.15.)

In the step I grievance response, Prisoner Counselor J. Johnson (not a party) stated that Plaintiff had been moved to the observation cell to protect him from black mold because this cell had been freshly painted and had 24 hour camera coverage to monitor Plaintiff's health. The

4

grievance response states that Plaintiff showed no signs of compromised breathing or other health issues and was subsequently transferred to another level V facility. (*Id.*, PageID.16.) Plaintiff's step II and III appeals were denied. (*Id.*, PageID.17–19.)

Plaintiff appears to be asserting claims under the First and Eighth Amendments. Plaintiff seeks damages and injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

5

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Respondeat Superior

Plaintiff claims that Defendants Schroeder, Russell, Bolton, and Washington failed to properly investigate his grievances or to take corrective action in response to his grievances by having Plaintiff moved to another cell.[1] However, Plaintiff fails to allege any facts showing that Defendants Schroeder, Russell, Bolton, and Washington took any action against him, other than to state that these Defendants failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct

---

[1] The Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See, e.g.*, *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Further, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (discussing that there is no constitutional right to a grievance procedure).

of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Schroeder, Russell, Bolton, and Washington encouraged or condoned the conduct of their subordinates, or authorized, approved or

7

knowingly acquiesced in the conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events at issue in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Schroeder, Russell, Bolton, and Washington are premised on nothing more than respondeat superior liability, Defendants Schroeder, Russell, Bolton, and Washington are properly dismissed from this action.

### B. Retaliation

Plaintiff contends that Defendant Johnson retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

8

In Plaintiff's complaint and the attached grievances, he indicates that he filed a grievance regarding black mold in his cell and that his mother called the prison to express her concerns about black mold in Plaintiff's cell. Plaintiff states that in response to these complaints, Defendant Johnson had him moved to a suicide cell without the same amenities as a regular segregation cell. In addition, Plaintiff contends that Defendant Johnson would not allow him to be moved to another cell when his toilet was not working. In Plaintiff's step I grievance filed on June 16, 2023, he asserts that Defendant Johnson ordered the transfer and that corrections officers told him that there were orders to keep him in the cell because of prior grievances. (ECF No. 1-1, PageID.15.) Although Plaintiff has by no means proven his First Amendment retaliation claim, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Johnson at this point in the proceedings.

      C.      **Eighth Amendment**

Plaintiff claims that he was denied a functional toilet for a period of seventy-two hours when Defendant Johnson refused to allow him to be moved to another cell. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S.

9

at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

10

Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal quotation omitted)). However, Plaintiff in this case states that he was required to stay in a cell where his toilet was overflowing with feces and urine for a period of seventy-two hours. Such allegations could be construed as constituting a deprivation of essential sanitation. *See Rhodes*, 452 U.S. at 348; *cf. Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house [the prisoner-plaintiff] in such deplorably unsanitary conditions for such an extended period of time," which included feces covering the walls and floors and packed into the water faucet (citations omitted)). Therefore, although Plaintiff has by no means proven his Eighth Amendment claim, the Court will not dismiss Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Johnson on initial review.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Schroeder, Russell, Bolton, and Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First

11

Amendment retaliation and Eighth Amendment conditions of confinement claims against Defendant Johnson remain in the case.

An order consistent with this opinion will be entered.


Dated: March 29, 2024 /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE